[Cite as *State v. Dantzler*, 2015-Ohio-3641.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | Nos. 14AP-907<br>(C.P.C. No. 14CR-1168) |
| v. | : | and 14AP-908<br>(C.P.C. No. 12CR-5829) |
| Jonathan M. Dantzler, Jr., | : | |
| Defendant-Appellant. | : | (REGULAR CALENDAR) |

## D E C I S I O N

### Rendered on September 8, 2015

*Ron O'Brien,* Prosecuting Attorney, and *Barbara A. Farnbacher,* for appellee.

*Brian J. Rigg,* for appellant.

APPEALS from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, Jonathan M. Dantzler, Jr., appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to a jury verdict, of three counts of aggravated murder, three counts of murder, two counts of aggravated robbery, one count of aggravated burglary, and one count of felonious assault, all with specifications, as well as one count of tampering with evidence. Because (1) trial counsel did not render constitutionally ineffective assistance, and (2) both sufficient evidence and the manifest weight of the evidence support defendant's convictions, we affirm.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 2} On September 17, 2012, in case No. 12CR-5829, a grand jury indicted defendant on two counts of aggravated robbery, felonies of the first degree, one count of

aggravated burglary, a felony of the first degree, two counts of aggravated murder, unclassified felonies, two counts of murder, unclassified felonies, one count of attempted murder, a felony of first degree, and two counts of felonious assault, felonies of the second degree, all carrying firearm and criminal gang specifications, and one count of tampering with evidence, a felony of the third degree. On January 10, 2014, the victim of the alleged attempted murder passed away. As a result, in case No. 14CR-1168, the grand jury further indicted defendant on one count of aggravated murder and one count of murder, both unclassified felonies, containing firearm and criminal gang specifications. Defendant pled not guilty to all of the charges. The state filed a motion to join the two cases, which the trial court granted.

{¶ 3}   The various charges concerned two incidents: a shooting incident which occurred on October 30, 2012, at 1810 Gault Street, and a shooting incident which occurred on November 5, 2012, at 1244 Atcheson Street, both in Columbus, Ohio.

*A. The Gault Street Incident*

{¶ 4}   On October 30, 2012, Officer Travis Turner responded to a dispatch call regarding a shooting at 1810 Gault Street. A "panicked, stressed out," Tanish McGrapth tried to open the door of the residence for Officer Turner, but a body was blocking the doorway. (Tr. 24.) Officer Turner had to "use force to open the door." (Tr. 24.) Once inside, Officer Turner discovered a seriously injured female, later identified as Theresa Cooper, sitting in a chair. The individual on the floor, later identified as Marcus Leonard, was dead.

{¶ 5}   McGrapth explained that she lived at 1810 Gault Street with Leonard and Cooper at the time of the incident, and stated that the occupants all sold heroin out of the residence. McGrapth stated that, on October 30, 2012, their neighbor, Mary Page, knocked on the door and asked to buy some drugs. Cooper answered the door, told Page no and tried to shut the door, but Page put her foot in the doorway to prevent Cooper from closing it. At that point, the "door flew open, and a gun came through the door." (Tr. 72.) McGrapth "ducked" and crawled into the kitchen; she was not shot. (Tr. 72.) Although she heard numerous gunshots, McGrapth did not see the shooter. As a result of this incident, Leonard died instantly from the gunshot wounds he sustained. Cooper suffered a gunshot wound to her back and remained in a paraplegic state for nearly one

year, until she succumbed to her injuries and passed away. Cooper's official cause of death was "[c]omplications of gunshot wound to the chest." (Tr. 378.)

{¶ 6} Page explained that, on October 30, 2012, Dante, a local crack cocaine dealer, came to her residence and asked her if she wanted to make some money. She said she did, and left her house and got into Dante's car. Two men were already in the car with Dante, they were introduced to Page as "Twice" and "Baby Jesus." Page identified defendant as being the individual introduced to her as Baby Jesus. The men told Page that they just needed her to knock on the door of 1810 Gault Street, and defendant gave Page two rocks of crack cocaine for her services. As they were in the car, Page overheard Twice talking on his phone saying, "[w]e better go rob this [n-word] for these bands * * * he got all this money." (Tr. 105.) Page stated that defendant was present in the car as Twice made these statements.

{¶ 7} Dante drove to Gault Street and remained in the car as Page, Twice, and defendant approached the apartment. Page stated that defendant and Twice stood up against the wall, both with "guns in their hand," as she "knocked on the door." (Tr. 107.) After Page was unsuccessful in gaining entry into the apartment, Twice "pushed the door all the way open." (Tr. 108.) Page "ducked up under and went out the door," as both defendant and Twice "went in and started shooting." (Tr. 108.) Page stated that after Twice and defendant entered the Gault Street residence, she "just heard firing after that, just loud gun firing." (Tr. 108.)

{¶ 8} Detective Robert Conner was the lead detective on the Gault Street homicides, and he interviewed defendant regarding the incident. Defendant told Detective Conner that he went to Gault Street with Dante, Page, and another individual on the day in question "to go buy some dope from the dude" who lived there, but stated that "it turned ugly." (Tr. 163.) Defendant identified the other individual as "the shooter." (Tr. 453.) Defendant told Detective Conner that he, Page, and the shooter went up to the door, but he refused to discuss what happened after Page knocked on the door.

{¶ 9} In his trial testimony, defendant explained that he was a crack cocaine dealer, and that he, Twice, and Page went to Gault Street on October 30, 2012 to buy a large quantity of crack cocaine. Defendant stated that Page and Twice went into the residence and purchased the drugs with defendant's money. Defendant then stated that

he returned to his residence, so he "could sell [his] crack." (Tr. 429.) Defendant stated that hours later, Twice contacted him and informed him that the shooting in question had occurred. Defendant denied having any involvement in the Gault Street shooting.

*B. The Atcheson Street Incident*

{¶ 10} On November 5, 2012, Officer Demetris Ortega responded to a report of a shooting at 1244 Atcheson Street. When Officer Ortega arrived on the scene, "there was some chaos, some screaming, and there was a * * * male black laying * * * in front of a porch, not breathing. Looked like he'd been shot." (Tr. 183.) The shooting victim was later identified as Malik West. Individuals at the scene told Officer Ortega that an individual by the street name "Jesus" had shot the victim, and that Jesus had ran westbound from the scene. (Tr. 184.) Officer Ortega ran westbound in pursuit. As Officer Ortega ran down the alley, a cable repairman up on a ladder said, " 'Your suspects ran westbound from here and threw a gun in the trash can,' pointing toward a trash can." (Tr. 184.) Office Ortega discovered a semiautomatic weapon inside the trash can.

{¶ 11} Shawnta Carmichael, a resident of 1244 Atcheson Street, recounted that on the afternoon of November 5, 2012, she and Malik West were sitting out on the front porch of her house when defendant and another man approached West. Carmichael knew defendant, as she had attended high school with him. Carmichael asked the men "to get off the porch because [her] grandmother was coming." (Tr. 217.) The men then walked across the street, exchanged some words, and Carmichael saw defendant pull a gun out and shoot West twice. West attempted to run back up towards the porch, but collapsed. Defendant ran after West. When defendant reached West, he set his gun down, and turned West "over and went in his pockets," taking out money and bags of marijuana. (Tr. 223.) Defendant then fled the scene.

{¶ 12} Willita Cooksey, Carmichael's mother, also resided at 1244 Atcheson Street. Cooksey stated that she was inside the house when she heard two gunshots, followed by Carmichael frantically banging on the door. Upon opening the door, Cooksey observed West collapse onto the front porch. She then saw defendant run up, turn West over, rummage through his pockets, and run off with West's cash. Cooksey told police what she had seen, and identified defendant from a photo lineup as the

individual who she saw go through West's pockets. West died from the gunshot wound to his chest. Forensic evidence revealed that the shell casings recovered from the scene near 1244 Atcheson Street were fired by the gun Officer Ortega found in the trash can.

{¶ 13} Defendant denied any involvement in the Atcheson Street incident.

{¶ 14} The jury found defendant guilty of the crimes and specifications charged in the indictment. The court accepted the jury's verdict, and sentenced defendant to a total prison term of three life sentences, plus an additional twelve years on the specifications.

## II. ASSIGNMENTS OF ERROR

{¶ 15} Defendant appeals, raising the following assignments of error for our review:

> [I.] DEFENDANT WAS EFFECTIVELY DENIED HIS CONSTITUTIONAL RIGHT TO ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO FILE A MOTION TO SEVER THE COUNTS OF THE INDICTMENT PURSUANT TO CRIM. R. 14.

> [II.] THE VERDICT IS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

## III. FIRST ASSIGNMENT OF ERROR – INEFFECTIVE ASSISTANCE

{¶ 16} In his first assignment of error, defendant asserts that he was deprived of his constitutional right to the effective assistance of counsel. Specifically, defendant asserts that his counsel "was ineffective in abrogating his duty to Defendant by failing to file a motion to sever the charges of the indictment." (Appellant's Brief, 11-12.) Defendant contends that "the trial court would have severed the indictment and granted Defendant two trials and that the resultant outcome of either would have been different." (Appellant's Brief, 13.)

{¶ 17} In order to succeed on the claim of ineffective assistance of counsel, defendant must satisfy a two-prong test. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Defendant must show that (1) defense counsel's performance was so deficient that he was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) that defense counsel's errors prejudiced defendant, depriving him of a trial whose result is reliable. *Id.* The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley,* 42 Ohio

St.3d 136, 143 (1989), quoting *Strickland* at 697. Regarding ineffective assistance claims based on counsel's failure to file a motion, a defendant must show that (1) the motion would have been granted, and (2) that there was a reasonable probability that the verdict would have been different had the motion been made. *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 63.

{¶ 18} Defendant contends that the joinder of all the offenses was prejudicial and improperly influenced the jury. Defendant asserts that "[a]dmitting evidence of other crimes in this instance is unduly cumulative and even if probative * * * the probative value is certainly outweighed by the threatened prejudice." (Appellant's Brief, 15.)

{¶ 19} " 'The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged "are of the same or similar character." ' " *Raver* at ¶ 65, quoting *State v. Lott*, 51 Ohio St.3d 160, 163 (1990), quoting *State v. Torres*, 66 Ohio St.2d 340 (1981). If it appears that a defendant would be prejudiced by the joinder, a trial court may grant a severance under Crim.R. 14. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 94. " 'A defendant [moving for severance] under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial * * *.' " *Raver* at ¶ 65, quoting *Lott* at 163.

{¶ 20} "[A] defendant is not prejudiced by joinder where the joined offenses are 'simple and direct, so that a jury is capable of segregating the proof required for each offense.' " *State v. Wilson,* 2d Dist. No. 20910, 2005-Ohio-6666, ¶ 38, quoting *State v. Fletcher,* 2d Dist. No. 2003-CA-62, 2004-Ohio-4517, ¶ 41. *See also State v. Torres*, 66 Ohio St.2d 340, 343 (1981). Likewise, severance is not required if the evidence would have come in as other acts evidence under Evid.R. 404(B). *Wilson* at ¶ 38. "Thus, when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)." *Lott* at 163.

{¶ 21} Additionally, in evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

under the circumstances the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, citing *Michel v. Louisiana,* 350 U.S. 91, 101 (1955). "Trial strategy, including debatable trial tactics, does not constitute ineffective assistance of counsel." *State v. Benitez,* 8th Dist. No. 98930, 2013-Ohio-2334, ¶ 31, citing *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 111. Indeed, the decision to file a motion for separate trials or to proceed with the joinder of the offenses may be a matter of counsel's trial strategy. *Benitez* at ¶ 31.

{¶ 22} Here, we find it reasonable to presume that trial counsel's decision not to file a motion to sever the offenses was trial strategy. Defense counsel could have reasonably believed that one trial would be the best strategy to try and persuade the jury to return a verdict of not guilty on all counts of the indictment. Indeed, defendant presented a common defense to both incidents; that he was not present at either shooting. If the jury had found defendant credible, it would have been likely to believe that he was not responsible for either shooting. Conversely, if the cases were tried separately, defendant risked being acquitted of all charges in one trial, only to be found guilty and sentenced to life in prison in the other trial. Because the decision not to file a motion to sever was a reasonable trial strategy, defendant has not established that he was deprived of the effective assistance of counsel.

{¶ 23} Moreover, even if defense counsel had moved for severance, the trial court would have been well within its discretion in maintaining the joinder. The evidence relating to each incident was simple and direct: the incidents occurred separately, involved different victims, and different eyewitnesses independently identified defendant as the shooter at each incident. As such, there was no concern that the jury would confuse the evidence, and defendant cannot establish that he was prejudiced by the joinder.

{¶ 24} While defendant asserts that the evidence was cumulative, there is nothing in the record suggesting that the jury factored the evidence from the Gault Street incident in determining defendant's guilt in the Atcheson Street incident, or vise versa. Both parties asked the jury to deliberate on each count separately, and the judge instructed the jury to "consider each count and the evidence applicable to each count separately, and" to state their "finding as to each count uninfluenced by your verdict as

to any other count." (Tr. 568.) *See State v. Garner*, 74 Ohio St.3d 49, 59 (1995) (noting that "[a] jury is presumed to follow the instructions * * * given it by a trial judge").

{¶ 25} Based on the foregoing, defendant's first assignment of error is overruled.

## IV. SECOND ASSIGNMENT OF ERROR – SUFFICIENCY AND MANIFEST WEIGHT

{¶ 26} In his second assignment of error, defendant argues that "the verdict must not stand because the weight and sufficiency of the evidence does not support the finding of guilty to the charges, or the specification." (Appellant's Brief, 19.)

### A. Sufficiency

{¶ 27} Whether evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The evidence is construed in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Conley*, 10th Dist. No. 93AP387 (Dec. 16, 1993). When reviewing the sufficiency of the evidence the court does not weigh the credibility of the witnesses. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79.

### 1. Aggravated Robberies

{¶ 28} Defendant was found guilty of two counts of aggravated robbery, both with firearm and gang specifications. R.C. 2911.01 defines the crime of aggravated robbery, and provides, in relevant part, that:

> No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
>
> * * *
>
> (3) Inflict, or attempt to inflict, serious physical harm on another.

R.C. 2911.01(A).

{¶ 29} R.C. 2941.145 imposes a mandatory three-year prison term on an offender if the offender "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.142 imposes a mandatory prison term of either one, two or three years on an offender who commits a felony "that is an offense of violence while participating in a criminal gang."

{¶ 30} Regarding the gang specification, defendant admitted to being a member of the Trevitt Crips gang, and stated that he had been in a gang for years. (*See* Tr. 433-38.) Detective Robert Vass testified that defendant was a documented member of the Trevitt and Atcheson Crips, and recounted several incidents of gang-related crime that defendant was involved in. (*See* Tr. 318-21). The state also submitted pictures taken from social media websites that depicted defendant with documented members of the Trevitt and Atcheson Crips, displaying gang signs, and holding firearms. Accordingly, there was sufficient evidence in the record to establish that defendant committed these offenses while participating in a criminal gang.

{¶ 31} Regarding the aggravated robbery convictions, Page testified that she heard Twice on the phone, immediately before the Gault Street incident and in defendant's presence, saying that they were going to rob someone of their money. Page stated that after she knocked on the door to 1810 Gault Street, defendant and Twice, both armed with firearms, entered the house and began shooting. This evidence was sufficient to support defendant's aggravated robbery conviction and the firearm specification related to the Gault Street incident. Carmichael and Cooksey both testified that, after defendant shot West, he flipped him over, and took money out of West's pockets. This evidence was sufficient to support defendant's aggravated robbery conviction and the firearm specification related to the Atcheson Street incident.

### 2. Aggravated Burglary

{¶ 32} Defendant was found guilty of one count of aggravated burglary, with both firearm and gang specifications. R.C. 2911.01 defines the crime of aggravated burglary, and provides, in relevant part, that "[n]o person, by force, * * * shall trespass in an occupied structure * * *, when another person * * * is present, with purpose to commit

in the structure * * * any criminal offense, if * * * [t]he offender has a deadly weapon * * * on or about the offender's person." R.C. 2911.11(A)(2). Page testified that, after she was unable to gain entry to the Gault Street residence, Twice and defendant entered the home by pushing the door open, and that both men then began shooting once inside the residence. This evidence was sufficient to support the aggravated burglary charge and the specifications.

### 3. Aggravated Murder & Murder

{¶ 33} Defendant was found guilty of three counts of aggravated murder and three counts of murder, all with firearm and gang specifications. R.C. 2903.01 defines aggravated murder, and provides, in relevant part, that "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, * * * aggravated robbery, [or] * * * aggravated burglary." R.C. 2903.01(B). R.C. 2903.02 defines murder, and provides that "[n]o person shall purposely cause the death of another." R.C. 2903.02(A).

{¶ 34} Page's testimony established that, during the commission of the aggravated robbery and burglary of the Gault Street residence, defendant and Twice entered the residence and began shooting. Leonard and Cooper both died as a result of the gunshot wounds they sustained during that incident. Carmichael testified that she watched defendant pull out a gun and shoot West twice, as he stood approximately five or six feet away from West. Defendant then stole West's money and fled the scene. West died from the gunshot wound to his chest. Accordingly, there was sufficient evidence to support defendant's aggravated murder and murder convictions, and the specifications attached to those charges.

### 4. Felonious Assault

{¶ 35} Defendant was found guilty of felonious assault, with both firearm and gang specifications. R.C. 2903.11 defines the crime of felonious assault, and provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon." R.C. 2903.11(A)(2). Page testified that defendant entered the Gault Street residence with a firearm and began shooting. McGrapth testified that she was in the apartment on October 30, 2012 when the door "flew open, and a gun came through the door," and many shots were fired. (Tr. 72.)

McGrapth was able to crawl into the kitchen in order to avoid being shot. Defendant's act of firing the gun inside of the occupied Gault Street residence was sufficient to support the felonious assault conviction and the specifications. *See State v. Turner*, 10th Dist. No. 97AP-709 (Dec. 30, 1997), quoting *State v. Brown*, 8th Dist. No. 68761 (Feb. 29, 1996) (noting that " '[t]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence' "); *State v. Green*, 58 Ohio St.3d 239, 241 (1991) (holding that the "act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon is sufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)").

### 5. Tampering With Evidence

{¶ 36} Defendant was also found guilty of tampering with evidence. R.C. 2921.12 defines tampering with evidence, and provides, in relevant part, that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1). The cable repairmen, Demetrius Crockett, testified that as he was installing cable lines in an alley near Atcheson Street, he heard "anywhere from two or three gunshots," and then saw an individual dump an object into a nearby trash can. (Tr. 194-95.) Carmichael testified that she saw defendant shoot West and then flee the scene. Forensic evidence revealed that the firearm recovered from the trash can was the firearm which caused West's death. Accordingly, there was sufficient evidence to support defendant's conviction for tampering with evidence. *See State v. Klein*, 3d Dist. No. 14-12-09, 2013-Ohio-2387, ¶ 43 (finding sufficient evidence to support the tampering with evidence conviction, as defendant had "discarded the clothes and gun used during the robbery, as well as the pill bottles, into a gas station dumpster"); *State v. Wright*, 9th Dist. No. 25280, 2010-Ohio-5106, ¶ 16 (noting that by throwing "the gun into a trash can," defendant had "impair[ed] its availability in the investigation of Smith's murder").

*B. Manifest Weight*

{¶ 37} Sufficiency of the evidence and manifest weight of the evidence are distinct concepts; they are "quantitatively and qualitatively different." *Thompkins* at 386. When presented with a manifest weight argument, we engage in a limited weighing of evidence to determine whether sufficient competent, credible evidence permits reasonable minds to find guilt beyond a reasonable doubt. *Conley,* supra. *Thompkins* at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). In the manifest weight analysis the appellate court considers the credibility of the witnesses and determines whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1983). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part or none of a witness's testimony." *State v. Raver,* 10th Dist. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 38} Defendant asserts that his convictions are against the manifest weight of the evidence because there was no physical evidence tying him to the crimes, "none of the witnesses to the shooting at Gault can place Defendant at the scene during the time of shooting or identify him as the shooter," and observes that the "only witnesses to identify Defendant at the Atcheson shooting had a motive to accuse him based on previous events." (Appellant's Brief, 19.) Defendant notes that the state's witnesses were "known drug abusers and offenders; one with an explicit agreement motivating her testimony." (Appellant's Brief, 20.)

{¶ 39} The lack of physical evidence, such as fingerprints or DNA evidence, linking defendant to the crimes is immaterial. *See State v. Jackson*, 10th Dist. No. 99AP-138 (Feb. 22, 2000). Eyewitnesses provided direct testimonial evidence identifying defendant as the culprit of the various charges. "[C]ircumstantial evidence and direct evidence inherently possess the same probative value[.]" *Jenks* at paragraph

one of the syllabus. Thus, " 'proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence.' " *Jackson*, quoting *State v. Griffin*, 13 Ohio App.3d 376, 377 (1st Dist.1979). Indeed, " '[e]yewitness identification testimony is sufficient to support a conviction.' " *State v. Coleman*, 10th Dist. No. 99AP-1387 (Nov. 21, 2000), quoting *State v. Artis*, 10th Dist. No. 93APA11-1547 (May 17, 1994).

{¶ 40} Page stated that defendant, armed with a gun, entered the Gault Street residence and began shooting. Leonard and Cooper both sustained gunshot wounds as a result of that incident. Accordingly, the jury reasonably inferred from this evidence that defendant shot the gun he was carrying when he went into the Gault Street residence.

{¶ 41} Although, under a manifest weight of the evidence analysis, we are able to consider the credibility of the witnesses, "in conducting our review, we are guided by the presumption that the jury, * * * is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Tatum*, 10th Dist. No. 10AP-626, 2011-Ohio-907, ¶ 5, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). The jury was informed of Page's deal with the state and of her criminal history. The jury was also informed of McGrapth's criminal history, that Carmichael was previously injured in a drive-by shooting which defendant was the intended target of, and of Carmichael's criminal history. The jury did not lose its way simply by believing the state's witnesses. *See State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, ¶ 111.

{¶ 42} Finally, while defendant notes that he testified that he did not commit the offenses at issue, the jury was under no obligation to accept his testimony as truthful. *State v. Carter*, 72 Ohio St.3d 545, 554 (1995).

{¶ 43} Engaging in the limited weighing of the evidence which we are permitted, we cannot say the jury clearly lost its way when it found defendant guilty of the various charges and specifications.

{¶ 44} Based on the foregoing, defendant's second assignment of error is overruled.

## V. DISPOSITION

{¶ 45} Having overruled defendant's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and KLATT, JJ., concur.

_____