[Cite as *State v Valentine*, 2019-Ohio-2243.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 18 CA 27 |
| ROBERT B. VALENTINE, JR. | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:        Criminal Appeal from the Court of Common
                                Pleas, Case No.  17 CR 706


JUDGMENT:                       Affirmed


DATE OF JUDGMENT ENTRY:         June 5, 2019


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

KYLE WITT                               ANDREW T. SANDERSON
PROSECUTING ATTORNEY                    BURKETT & SANDERSON, INC.
CHRISTOPHER A. REAMER                   738 East Main Street
ASSISTANT PROSECUTOR                    Lancaster, Ohio  43130
239 West Main Street, Suite 101
Lancaster, Ohio  43130

*Wise, J.*

**{¶1}**   Appellant Robert B. Valentine, Jr. appeals the May 8, 2018, decision of the Fairfield County Court of Common Pleas denying his motion to sever the counts of the indictment related to the individual victims.

**{¶2}**   Appellee is State of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶3}**   On October 24, 2017, the city of Lancaster police department obtained a single count rape complaint and arrest warrant for Robert Brandon Valentine, Jr. of 814 Roosevelt Avenue, Lancaster, Ohio. On the same date, Valentine was taken into custody, and a search warrant was executed at the Roosevelt Avenue residence in an effort to seize a computer believed to contain pornographic materials/data, and several sexual toys. (T. at 645, 652).

**{¶4}**   On November 2, 2017, the Fairfield County grand jury returned an eleven (11) count indictment charging Valentine with five (5) counts of Rape, in violation of R.C. §2907.02(A)(1)(b), felonies of the first degree; two (2) counts of Kidnapping, in violation of R.C. §2905.01(A)(4), felonies of the first degree; and four (4) counts of Gross Sexual Imposition, in violation of R.C. §2907.05(A)(4), felonies of the third degree. The indictment alleged conduct against two minor victims, B.R. and K.L.

**{¶5}**   On February 28, 2018, Valentine filed a motion to sever the counts of the indictment related to the individual victims.

**{¶6}**   On March 1, 2018, the Fairfield County Grand Jury issued a *superseding* indictment that added four (4) counts of Disseminating Matters Harmful to Juveniles in violation of R.C. §2907.31(A)(1)&(F), all felonies of the fourth degree. The *superseding*

indictment was also reorganized such that counts one through nine involved victim, B.R. and ten through fifteen involved victim, K.L.

**{¶7}** On April 27, 2018, the State filed a memorandum contra to Valentine's motion to sever, and on April 30, 2018, the trial court held an oral hearing on the motion. At the oral hearing, counsel for Valentine stood on his motion, asserting that the anticipated evidence was not admissible under Evid.R. 404(B) and was not simple and distinct. (Motion to Sever T. at 3-4).

**{¶8}** The State asserted that the evidence would be presented in a simple and direct manner; that each victim would testify to certain behaviors by Valentine that demonstrated a plan, motive, or intent to engage in sexual abuse against minors, which could be admissible under Evid.R R. 404(B); and that the separate victims would each likely testify as eyewitnesses to observations that Valentine had sexually abused the other victim even if the counts were severed. (Motion to Sever T. at 5-10).

**{¶9}** On May 8, 2018, the trial court denied Valentine's motion to sever finding he had not met his affirmative burden to demonstrate any factual basis as how joinder of the offenses of the two victims specifically prejudiced him or how his trial strategy would change if the counts related to B.R. and K.L. were tried separately. The trial court further found that the anticipated evidence related to the separate victims B.R. and K.L. appeared capable of presentation in a simple and direct manner and the State had set forth an arguable basis that "other acts" evidence under Evid.R. 404(B) was likely to be present in the case.

**{¶10}** On May 16 through May 18, 2018, the matter proceeded to jury trial.

**{¶11}** At trial, the jury was presented with the following testimony and evidence.

{¶12} In late January, 2014, Victoria Wolfinger allowed her longtime friend Robert Brandon Valentine, Jr. to move in with her at 718 E. Wheeling Street, Lancaster, Ohio. (T. at 323, 327).

{¶13} In April, 2014, Wolfinger and Valentine moved to a home on 814 North Roosevelt, Lancaster, Ohio, which Valentine owned, until Wolfinger moved out on October 7, 2017. (T. at 325, 326, 339). Wolfinger worked a fulltime job and several part time jobs, which frequently kept her out of the house on a daily basis. (T. at 316).

{¶14} Wolfinger was close with two nephews, B.R. and K.L., who both frequently spent time with her and Valentine. (T. at 321). During the time when Wolfinger was at work and away from the house, Valentine was the primary caregiver for B.R. and K.L. Both boys frequently slept with Valentine because Wolfinger got up early for work. (T. at 333, 334).

{¶15} Between May and June of 2016, K.L. had moved in to 814 North Roosevelt with Wolfinger and Valentine to attend elementary school to help his mother concentrate on her college studies in Indiana. (T. at 291-293). Around September/October 2016, K.L.'s mother, Brittany Wood, noticed he was acting out. (T. at 289, 298). During the week of the Fairfield County Fair in October 2016, K.L. called his mother upset and demanding to come home to his mother in Indiana. (T. at 299-301).

{¶16} Wolfinger had arrived home one evening from work the week of the fair in October, 2016, to find K.L. had been misbehaving according to Valentine and was refusing to come inside to do his homework. (T. at 377). After Wolfinger yelled at K.L. to get in the house, K.L. yelled "Brandon's gay" and "He sucked my dick." (T. at 378).

{¶17} The following weekend Wolfinger returned K.L. to his mother in Indiana. (T. at 382). Wolfinger stated that because she wanted badly to believe Valentine had not abused K.L., did not report the incident, and did not leave 814 Roosevelt until October 7. 2017. (T. at 383-384).

{¶18} On February 8, 2017, Marcie Wesselhoft, an attendance officer and visitation monitor with Fairfield County Child Protective Services, responded to a case of alleged physical abuse involving B.R. in Bremen, Ohio. (T. at 67, 74). Wesselhoft contacted B.R. and his custodian and biological grandmother, Margie Stevens. (T. at 75). As Wesselhoft was speaking alone with B.R. and attempting to build a rapport with B.R., she accidentally referred to a counselor B.R. was seeing as Brandon. B.R. quickly corrected Wesselhoft noting his counselor was Clayton and Brandon is the one that did bad things to him. (T. at 77, 78). B.R. described the "bad things" Uncle Brandon did as touching B.R.'s penis and making B.R. touch his [Uncle Brandon's] penis as well. (T. at 79). Uncle Brandon was frequently called, "Big Brandon" by B.R. (T. at 146). During this visit with Stevens, Wesselhoft also learned that the family had concerns of sexual abuse against K.L. as well. (T. at 83).

{¶19} Wesselhoft made a referral of the allegations of sexual abuse to law enforcement and, consistent with her agency policy, went to inform the alleged perpetrator, Valentine, of the allegations on March 16, 2017. (T. at 81). Wesselhoft was accompanied by Detective Dan Thomas of the Lancaster Police Department. (T. at 80-82). Det. Thomas recorded the conversation, however, Valentine was unaware of the recording. (T. at 636-639). Det. Thomas had initially asked Valentine about discussing K.L.'s allegations in October, 2016, and quickly thereafter Wesselhoft informed Valentine

she needed to notify him that he was the alleged perpetrator in two cases of alleged sexual abuse against both K.L. and B.R. (T. at 88, 91). Valentine responded as if he was confused at hearing the second name, B.R. and subsequently uttered, "We were never alone." (T. at 91).

**{¶20}** During the time period of this interaction, Valentine had let Wesselhoft and Thomas inside 814 Roosevelt, and Det. Thomas was able to observe a computer he later seized pursuant to search warrant on October 24, 2017. (T. at 645, 646).

**{¶21}** On October 24, 2017, Det. Thomas assisted with the preparation of a search warrant for Valentine's residence at 814 Roosevelt Avenue as additional information was learned that Valentine possibly used/possessed sexual toys described as a purple dildo and a tan dildo in committing acts of sexual abuse against the victims. In addition, the search warrant sought a computer described by the children as having been used by Valentine to display pornographic images to them. (T. at 645). Lancaster police had also obtained a complaint/warrant for arrest of Valentine on that same date. (See Complaint filed 10/24/17.)

**{¶22}** During execution of the arrest and search warrants, Det. Thomas had the home photographed prior to moving any objects. Det. Thomas seized three (3) computers but only an Asus computer located in the dining room area of the home appeared to be actively used. (T. at 649). Det. Thomas also obtained photographs from a nightstand drawer in Valentine's bedroom which depicted several personal lubricants labeled Astroglide and Lubrigel. (T. at 656).

**{¶23}** Det. Thomas also observed gaming systems inside Valentine's bedroom and in the downstairs living area. (T. at 659). Det. Thomas had occasion while executing

the search warrant to view the backyard area of the home from the kitchen sliding door; he noted no covering over the sliding door. (T. at 661). Valentine himself stated he was living alone at 814 Roosevelt at the time of his arrest on October 24, 2017. (T. at 664).

{¶24} The jurors also heard from both B.R. and K.L. B.R. was twelve (12) years of age at the time of trial and related that he previously lived with his grandmother Margie [Stevens]. (T. at 122-124). B.R. confirmed his Aunt Vickie [Wolfinger] lived in Lancaster with a roommate that B.R. frequently referred to as "Big Brandon." (T. 126-129). B.R. testified that his private parts included his "butt" and "the part he pees out of." (T. at 134). B.R. testified that frequently at both Aunt Vickie's apartment and at her home, "Big Brandon" would touch B.R.'s penis and his butt. B.R. testified that Valentine performed fellatio on B.R., fondled his penis, and that Valentine inserted dildos into B.R.'s anus. (T. at 134-138). B.R. further described that when Valentine penetrated B.R. with the tan dildo he would use "clear stuff' on the inside and outside of the tan dildo and it would come out. (T. at 139-140). B.R. testified that most of the sexual abuse occurred in Valentine's bedroom but that it also occurred in the living room. (T. at 142). B.R. testified the same types of sexual abuse occurred in Aunt Vickie's apartment [Wheeling Street]. (T. at 135). B.R. also explained that Valentine often lured him to Valentine's upstairs bedroom with the suggestion of playing the game system inside the bedroom. (T. at 143). Once upstairs, Valentine would shut the bedroom room and even hold B.R. down if he tried to get away. (T. at 145-146). B.R. also reported that he had observed Valentine sexually abusing his cousin, K.L. in the living room and bedroom areas of 814 Roosevelt. (T. at 145-146). B.R. described Valentine performing fellatio on K.L., fondling K.L.'s penis and penetrating K.L. with the purple and tan things (T. at 146). B.R. also reported that Valentine would

frequently call him over to the computer seized by Det. Thomas and display to him naked adults touching each other's private parts. (T. at 149). B.R. could not use the computer without the assistance of Valentine or Aunt Vickie. (T. at 182).

{¶25} During cross examination defense sought to point out differences in the two victims' reports of witnessing sexual abuse, the ability of B.R. to have observed K.L. being sexually abused while mowing in the back yard, and to suggest that B.R. may have been responsible for the pornographic content of the computer seized. On cross examination, B.R. described the purple and tan dildos as being kept in the nightstand drawer in Valentine's room. (T. at 169-170).

{¶26} Defense also elicited testimony that K.L. was frequently in the same room while Valentine was sexually abusing B.R. (T. at 176-178). Defense also questioned B.R.'s ability to have observed Valentine's sexual abuse of K.L. from the backyard area of the home. (T. at 178).

{¶27} At the request of Valentine, B.R.'s prior child advocacy center video was played for the jury and B.R. was then questioned about facts that he had not mentioned in the video, but had reported during testimony. (T. at 194-205).

{¶28} The jurors also heard from ten (10) year old K.L. (T. 208). K.L. is the cousin of B.R. and visited/lived with Wolfinger during various times. (T. at 210). K.L. reported that he also knew and stayed with Wolfinger's roommate Valentine or as K.L. called him, "Big B or Big Brandon." (T. at 212). K.L. played sports with Valentine, they worked in the garden together and play video games. (T. at 214-215). K.L. described a boy's private parts as being the "butt" and the "wiener." (T. at 216, 217). K.L. testified that a few months after he started to stay there, "Big B" started to touch him inappropriately. (T. at 219). K.L.

described that Valentine would fondle K.L.'s penis with his hand and perform fellatio on K.L. (T. at 220-221). K.L. related that the sexual abuse usually happened in Valentine's bedroom. (T. at 220). K.L. described the day the sexual abuse stopped, explaining that Valentine had told K.L. to shut off a video game and come upstairs with him. (T. at 221). K.L. refused and Valentine shut off the game and pulled K.L. upstairs. (T. at 222). As Valentine began fondling K.L.'s penis he stopped to go downstairs and obtain a mouth spray that he frequently used when his mouth got dry; K.L. fled outside to wait until Wolfinger got home. (T. at 223-224). K.L. also reported that Valentine threatened suicide if K.L. ever told others of the abuse. (T. at 224).

{¶29} K.L. further recalled an event in which B.R. had stayed the night and K.L. worried that Valentine had sexually abused B.R. K.L. stated that he was playing a video game downstairs and Valentine and B.R. where upstairs in Valentine's bedroom with the door closed. (T. at 229). K.L. also related that on approximately four occasions Valentine displayed to K.L. on the downstairs computer nude males engaged in sexual activity. (T. at 230-232).

{¶30} In addition to the testimony of the victims regarding sexual abuse the jury also heard testimony that Valentine was the primary user of and only individual likely to have control over a password-protected user file labeled, "Brandon" that was found on the seized computer. Both Wood and Wolfinger provided testimony as to having received emails from Valentine as early as 2012 from an email address labeled, bvalen2474@yahoo.com. (T. at 303, 347). Wolfinger confirmed that the file labeled "Brandon" was the only password-protected user file on the computer, and that the three separate designated user accounts immediately appeared on the home screen when

someone turned on the Asus computer. (T. at 344). Wolfinger stated that the user folder which was labeled in Valentine's name was created by him, and that she has never known his password. (T. at 344-345).

{¶31} Wolfinger also described and identified a series of photographs of victim K.L laying on Valentine's bed, which were found inside the computer folder labeled Brandon. (T. at 375, 376). Wolfinger had never seen the photographs before. (T. at 376).

{¶32} The jurors also heard from Dylan Waggy, a computer forensic analyst with the Bureau of Criminal Identification and Investigation. (T. at 485,486). Waggy had forensically analyzed an Asus computer seized and submitted from 814 Roosevelt by the Lancaster Police Department. (T. at 496). Waggy noted the computer's original account was set up in 2012 and labeled, "Brandon." (T. at 496). Waggy noted that of the three user accounts on the computer only the "Brandon" account was password protected. (T. at 496). Waggy noted the last usage/access to the Asus computer was on 10/24/2017 under the Brandon folder at 12:43 a.m.; a date Valentine confirmed he was living alone to Det. Thomas. Waggy also noted that a series of child images, those previously identified as K.L. by Wolfinger, were created/placed on the Brandon account on October 10, 2017, three days after Wolfinger had moved out of the residence. (T. at 499, 500). Waggy noted that his forensic analysis revealed the Chrome autofill information related to the "Brandon" user account was, Robert B. Valentine, bvalen2474@yahoo.ocom, 814 North Roosevelt. (T. at 511). Under the "Brandon" folder Waggy found evidence of ordinary everyday computer uses such as pizza orders, banking and the use of the Skype application. (T. at 515, 517). Waggy also detailed that his search had revealed numerous Google searches had been performed on the name "Robert Valentine" and further that

numerous Google search and web URL links suggested the computer was frequently used to access pornography. (T. at 503-510).

**{¶33}** Waggy explained that through various means pornography could be displayed through internet browsing, peer-to-peer sharing, DVDs or flash drives and without any actual image artifact being retained on a computer. (T. at 509, 510). Waggy further related that in the "Brandon" folder he found evidence that a Staples flash drive and peer to peer networks had been accessed to display pornography. (T. at 587, 588).

**{¶34}** The jurors also heard the testimony of Carrie Schnirring, MA, a psychological assistant with North East Ohio Behavioral Health. (T. at 595). Schnirring provided her qualifications and work experience in the field of child abuse trauma and conducting assessments of that trauma. (T. at 596-598). Schnirring provided expert testimony regarding her experience, current research in, and educational background related to the concepts of the process of disclosure, grooming behaviors of sexual offenders, and how a young child's memory works. (T. at 603-605; 607-612; 616-621).

**{¶35}** The state's final witness was Detective Thomas. In addition to detailing the preliminary investigative steps he took, Det. Thomas provided testimony regarding several intercepted jail phone calls between Valentine and a female that occurred around May 15th and 16th, 2018. (T. at 679). During the calls, Valentine, despite his earlier denial that he was never alone with at least one of the victims, acknowledged that at least one of the victims slept in his bedroom from time to time. (T. at 687). In a second call, Valentine spoke with the same female, exhibiting surprise that a folder labeled "Brandon" was found on his computer and denied knowing about the folder. (T. at 688). Valentine later assured

the female that no porn would show up on the computer as he had informed her from day one. (T. at 693).

**{¶36}** The State rested its case and offered 21 exhibits into evidence. (T. at 725-726). Valentine made a Crim.R. 29 motion to dismiss which the trial court overruled. (T. at 715). Valentine did not renew his motion to sever the counts related to B.R. or K.L. either at the close of the State's case or at the close of his case. Valentine rested his cases without calling any witnesses.

**{¶37}** Following deliberations, the jury found Valentine guilty on all counts of the indictment.

**{¶38}** On June 6, 2018, the matter proceeded to sentencing and the court imposed an aggregate maximum state prison term of two consecutive sentences of life without parole. (Judgment Entry of Sentence, June 8, 2018).

**{¶39}** Appellant now appeals to this Court, assigning the following error for review:

## ASSIGNMENT OF ERROR

**{¶40}** "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO GRANT HIM RELIEF FROM PREJUDICIAL JOINDER OF COUNTS OF THE INDICTMENT."

### I.

**{¶41}** In his sole assignment of error, Appellant argues the trial court erred in denying his motion to sever the counts in the indictment by the individual victims. We disagree.

**{¶42}** Appellant argues that the trial court erred when it denied his motion to sever the counts in the indictment into two separate trials, one for each victim. In his motion to

sever the charges, Appellant argued (1) the offenses related to the two separate victims were not related temporarily and do not involve the same alleged incident; (2) joinder of the offenses would unfairly prejudice him, arguing that none of the evidence or allegations related to the offenses with regard to one victim would be admissible against him in the prosecution of the offenses regarding the second victim; (3) evidence relating to the allegations specified regarding one victim is irrelevant to the prosecution of the offenses relating to the other victim; and (4) if joinder was permitted, the jurors would be tainted with respect to the independent allegations set forth in the various offenses.

{¶43} In general, the law favors joining multiple offenses in a single trial if the offenses charged "are of the same or similar character." *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990), citing *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981). Crim.R. 8(A), regarding joining offenses, provides that two or more offenses may be charged in the same indictment if they "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 13 also permits a court to "order two or more indictments * * * to be tried together, if the offenses * * * could have been joined in a single indictment[.]" Consequently, joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense. *State v. Czajka*, 101 Ohio App.3d 564, 577-578, 656 N.E.2d 9 (8th Dist.1995).

{¶44} Nonetheless, if it appears that a criminal defendant would be prejudiced by such joinder, then the trial court is required to order separate trials. Crim.R. 14. "It is the defendant, however, who bears the burden of demonstrating prejudice and that the trial

court abused its discretion in denying severance." *State v. Saade*, 8th Dist. Cuyahoga Nos. 80705 and Cuyahoga Nos. 80706, 2002-Ohio-5564, ¶ 12, citing *State v. Coley*, 93 Ohio St.3d 253, 754 N.E.2d 1129 (2001), and *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166.

**{¶45}** The state may negate claims of prejudicial joinder in two ways. *Lott* at 163, 555 N.E.2d 293. Under the first method, the "other acts" test, the state may argue that it could have introduced evidence of the other crimes under the "other acts" portion of Evid.R. 404(B), if the other offenses had been severed for trial. *Id.*, citing *Bradley v. United States*, 433 F.2d 1113 (D.C.Cir.1969).

**{¶46}** Evid.R. 404(B) recognizes that evidence of other crimes may be admissible for purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." If one offense could be introduced under Evid.R. 404(B) at the trial of the other offenses, had the offenses been tried separately, "any 'prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." *State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992), quoting *Drew v. United States*, 331 F.2d 85 (D.C.Cir.1964).

**{¶47}** "Under the second method, the 'joinder' test, the state is merely required to show that evidence of each crime joined at trial is simple and direct." *Lott*, 51 Ohio St.3d at 163, 555 N.E.2d 293, citing *State v. Roberts*, 62 Ohio St.2d 170, 405 N.E.2d 247 (1980); *Torres*, 66 Ohio St.2d at 344, 421 N.E.2d 1288. The Ohio Supreme Court made it clear that "when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under

Evid.R. 404(B)." *Id.*, citing *Roberts*; *Torres*; and *United States v. Catena*, 500 F.2d 1319 (3d Cir.1974).

{¶48} Evidence is "simple and direct" if (1) the jury is capable of readily separating the proof required for each offense, (2) the evidence is unlikely to confuse jurors, (3) the evidence is straightforward, and (4) there is little danger that the jury would "improperly consider testimony on one offense as corroborative of the other." *State v. Wright*, 4th Dist. Jackson No. 16CA3, 2017-Ohio-8702, ¶ 52, citing *State v. Freeland*, 4th Dist. Ross No. 12CA3352, 2015-Ohio-3410.

{¶49} Courts have held that evidence of multiple offenses is "simple and direct" where, for example, the offenses involved different victims, different incidents or factual scenarios, and different witnesses. *See State v. Dantzler*, 10th Dist. Franklin Nos. 14AP-907 and Franklin Nos. 14AP-908, 2015-Ohio-3641, ¶ 23 ("The evidence relating to each incident was simple and direct: the incidents occurred separately, involved different victims, and different eyewitnesses independently identified defendant as the shooter at each incident. As such, there was no concern that the jury would confuse the evidence, and defendant cannot establish that he was prejudiced by the joinder."); *State v. Lewis*, 6th Dist. Lucas Nos. L-09-1224 and Lucas Nos. L-09-1225, 2010-Ohio-4202, ¶ 33 ("Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof.").

{¶50} If either the "other acts" test or the "simple and direct" test is met, a defendant cannot establish prejudice from the joinder.

{¶51} An appellate court normally reviews a trial court's decision on joinder for an abuse of discretion. *State v. Banks,* 2015-Ohio-5413, 56 N.E.3d 289, ¶ 64 (8th Dist.), citing *State v. Grimes*, 8th Dist. Cuyahoga No. 94827, 2011-Ohio-4406. However, where a defendant fails to renew a Crim.R. 14 motion for severance either at the close of the state's case or the close of all evidence, he or she " 'waives all but plain error on appeal.' " *Lyndhurst v. Smith*, 8th Dist. Cuyahoga No. 101019, 2015-Ohio-2512, ¶ 32, quoting *State v. Howard*, 3d Dist. Marion No. 9-10-50, 2011-Ohio-3524.

{¶52} Here, Appellant failed to renew his motion to sever at the end of the state's case, which was also at the close of all of the evidence.

{¶53} To demonstrate plain error, Appellant must show "an error, i.e., a deviation from a legal rule" that was "an 'obvious' defect in the trial proceedings," and that the error "affected a substantial right," i.e., a "reasonable probability" that the error resulted in prejudice, affecting the outcome of the trial. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. "We recognize plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Lyndhurst* at ¶ 32, quoting *State v. Landrum*, 53 Ohio St.3d 107, 559 N.E.2d 710 (1990).

{¶54} Upon review, we find no error in this case, plain or otherwise. The offenses relating to the two victims were charged together under Crim.R. 8(A) because they were of the "same or similar character" and part of "a common scheme or plan" occurring over a relatively short period of time. As we stated, Ohio law favors joining multiple offenses in a single trial if the requirements of Crim.R. 8(A) are satisfied. *State v. Williams*, 73 Ohio St.3d 153, 158, 652 N.E.2d 721 (1995); *State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, ¶ 38.

{¶55} While the state argues that the cases could be tried together under either test, there is no reason for us to look to the more stringent "other acts" test because the evidence here was simple and straightforward. Appellant committed these sexual abuse offenses at the same locations in Fairfield County, Ohio between the dates of January 1, 2013 through October 16, 2016, for one victim and May 1, 2016 through October 1, 2016, for the other victim. Each victim testified in detail as to the sexual abuse which occurred at Appellant's home. Corroboration in the form of disclosure to other individuals was also presented. Both victims offered testimony as to observations of when/how Appellant likely committed sexual abuse against the other victim. This testimony would have been admissible even if severance of the counts had been granted.

{¶56} There was no complicated methodology to Appellant's crimes. Also, the prosecutor explained to the jury during closing arguments how the counts applied to each victim. Accordingly, we find that Appellant was not prejudiced in any way by the trial court's denial of his motion to sever the offenses.

{¶57} Moreover, we presume that the jury followed the court's instructions. *State v. Thompson,* 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 192, citing *State v. Loza*, 71 Ohio St.3d 61, 641 N.E.2d 1082 (1994). The trial court in this case instructed the jury as follows:

> The charges set forth in each count in the Indictment constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately and you must state your finding as to each count uninfluenced by your verdict as to any other count.

The Defendant may be found guilty or not guilty of any one or all of the offenses charged.

**{¶58}** Further, a trier of fact is also considered "capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated." *State v. Lunder*, 8th Dist. Cuyahoga No. 101223, 2014-Ohio-5341, ¶ 33, citing *Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288. There is nothing in the record before us to suggest that the jury confused the evidence as to the various counts or was improperly "influenced by the cumulative effect of the joinder." *Banks*, 2015-Ohio-5413, 56 N.E.3d 289, at ¶ 66.

**{¶59}** For the foregoing reasons, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

Baldwin, J., concur.

JWW/d 0515