**[Cite as *State v. Washington*, 2022-Ohio-625.]**

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2020 CA 0066 |
| CHEKIAH  WASHINGTON | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:          Criminal appeal from the Richland County
                                                          Court of Common Pleas, Case No. 2020-
                                                          CR-0043

JUDGMENT:                                      Affirmed

DATE OF JUDGMENT ENTRY:          March 3, 2022

APPEARANCES:

For Plaintiff-Appellee                        For Defendant-Appellant

GARY BISHOP                                  DAVID N. PATTERSON
PROSECUTIG ATTORNEY                  P.O. Box 1423
BY: AMANDA WEBBR                        Willoughby, OH 44096
38 South Park Street, 2nd Fl.
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Defendant-appellant Chekiah E. Washington, Jr. ["Washington"] appeals his convictions and sentences after a jury trial in the Richland County Court of Common Pleas.

*Facts and Procedural History*

{¶2} On January 13, 2020 the Richland County Grand Jury returned an Indictment charging Washington as follows,

| | | | |
|---|---|---|---|
| 1. | Rape | [K.R.] | Mar 17, 2015 |
| 2. | Attempted Rape | [K.R.] | Mar 17, 2015 |
| 3. | Kidnapping | [K.R.] | Mar 17, 2015 |
| 4. | Attempted Rape | [B.B.] | July 26, 2018 |
| 5. | Abduction | [B.B.] | July 26, 2018 |
| 6. | Abduction | [B.B.] | July 26, 2019 |
| 7. | Rape | [M.H.] | Sept 6, 2019 |
| 8. | Kidnapping | [M.H.] | Sept. 6, 2019 |
| 9. | Abduction | [M.H.] | Sept. 6, 2019 |
| 10. | Assault | [M.H.] | Sept. 6, 2019 |
| 11. | Public Indecency | [M.B.] | Sept. 8, 2019 |
| 12. | Public Indecency | [K.H.] | Nov. 11, 2019 |
| 13. | Rape | [K.H.] | Nov. 11, 2019 |
| 14. | Rape | [D.B.] | Dec. 7, 2019 |
| 15. | Attempted Rape | [D.B.] | Dec. 7, 2019 |
| 16. | Kidnapping | [D.B.] | Dec. 7, 2019 |

| 17. Abduction | [D.B.] Dec. 7, 2019 |
| 18. Assault | [D.B.] Dec. 7, 2019 |

**March 17, 2015 – K.R.**

{¶3}   Washington knew K.R. from high school.  The pair had sex at her home prior to March 17, 2015. 2T. at 300.[1] On March 17, 2015 K.R. went to Washington's home to hang out. Washington testified that K.R. had told him before she came over that she did not want to have sex. 8T. at 1491. Upon arrival at his home, K.R. and Washington went to his bedroom to watch a movie. Washington admitted that he pulled K.R.'s hair back and began licking her neck. 8T. at 1491.

{¶4}   K.R. testified that Washington pushed her down on the bed, took off her pants, while she was telling him "no" and "to like get his hands off [her]." 2T. at 277-278. She further testified that Washington forcefully inserted his penis into her vagina. 2T. at 281-282. K.R. repeatedly told Washington to stop. 2T. at 278. K.R. began freaking out and got down on the floor to find her clothes and her wallet. As she did, Washington went to her and tried to shove his penis and his "balls" in her mouth. 2T. at 280. She refused to open her mouth. Id.  Washington testified that K.R. told him that she felt like she was being raped. 8T. at 1495.

{¶5}   K.R. reported this rape to the police and had a Sexual Assault Nurse Examination ["SANE"].

---

[1] For clarity, the jury trial transcript will be referred to as, "__T.__," signifying the volume and the page number.

{¶6} The case was originally submitted to the Richland County Prosecutor's Office, but the Prosecutor's Office originally declined to prosecute on or about April 27, 2015. 2T.at 433-34.

### July 26, 2018 – B.B.

{¶7} B.B. testified that she was friends with Washington in 2018 through her roommate's boyfriend. 3T. at 529. At some point, B.B. and Washington became "friends with benefits," friends engaging in a sexual relationship but not boyfriend/girlfriend. 3T. at 532.

{¶8} On July 26, 2018, Washington and B.B. were in the midst of a consensual sexual encounter when B.B.'s period begun. 3T. at 535. Washington became angry that B.B. "got blood on him." Id. She wanted to stop; and, he wanted to continue. B.B. told Washington "no" multiple times. Id. Washington asked B.B. to perform oral sex on him, which she declined. 3T. at 540; 8T. at 1500. B.B. went into the bathroom to clean up.

{¶9} Upon her return from the bathroom, B.B. testified that Washington said she "was going to suck his dick." 3T. at 541. He pulled her down to the bottom of the bed and, holding her by the hair, rubbed his penis on her face and cheek and lips, trying to stick it in her mouth. Id. at 542. B.B. testified, "at one point it had slipped between my lips, but I was clenching my jaw so that he couldn't get it in my mouth and it would rub across my teeth." 3T. at 542. B.B. testified that she was hitting Washington's chest, trying to get him off of her.

{¶10} At one point Washington climbed off and got up to run away but he grabbed her by the ponytail and pulled her back. 3T. at 543. B.B. was finally able to

get out the door; however, Washington followed her down the hall, pinning her against the wall by her neck, and chocking her. 3T. at 552.

{¶11} Washington testified that he stopped when she asked him to stop. 8T. at 1500. Although he was disappointed that B.B. declined, he did not force B.B. to perform oral sex on him.  Id. Washington testified he called B.B., "[a] fat and nasty ass bitch." 8T. at 1500.  Washington testified that B.B. became enraged after he called her names. 8T. at 1501. Washington testified that B.B. charged him and collided with him in the hallway. 8T. at 1501.

{¶12} B.B. reported this rape to the police and had a Sexual Assault Nurse Examination ["SANE"]. B.B. admitted to having consensual sex with Washington sometime after July 26, 2018. 3T. at 600-602.

### September 6, 2019 – M.H.

{¶13} M.H. testified that she met Washington through Facebook. 6T. at 1159. On September 6, 2019, Washington asked M.H. to be his girlfriend. They had been "hanging out" for two weeks and the two had consensual sex within the two weeks prior to September 6, 2019. Id. at 1165.

{¶14} On September 6, 2019 Washington and M.H. made plans to go to Motel 6. The pair went grocery shopping, to dinner then to the motel. 6T. at 1159; 1163; 8T. at 1511. M.H.'s friend M.S. accompanied them to the movies. 6T. at 1165. Prior to the movie, M.H. smoked "wax" a concentrated form of THC. 6T. at 1225; 8T. at 1513. M.H. admitted that she had taken Xanax that day. 6T. at 1172. She further admitted that she did not have a prescription for the drug. Id.

{¶15} During the movie, Washington and M.H. engaged in consensual sex. 6T. at 1165; 8T. at 1514. M.S. accompanied the pair back to the motel and hung out with the pair for a while.

{¶16} Once M.S. left, Washington started touching M.H. and, when she said she did not want to have sex at that time, he told her he was not going to take "no" for an answer. 6T. at 1170. M.H. laughed because she thought Washington was joking. Id. He pulled down her pants and "proceeded to get on, like go inside [her], like sex." 6T. at 1170. Eventually, M.H. was able to kick Washington off of her. She pulled up her pants, grabbed her purse, ran out of the room, and locked herself in the truck. 6T. at 1170-71. She was naked from the waist up. Id. at 1177. She called M.S. who came back to the motel. M.H. followed M.S. back to M.S.'s home, spoke to her for a short time, and then drove to her own home. 6T. at 1270. A different friend took M.H. to the hospital in Mansfield where a SANE examination was done.

{¶17} Washington testified that all the sex with M.H. was consensual. 8T. at 1518-1520. Washington claimed that M.H. had an anxiety attack while they were engaged in sex. Id. at 1520-22. Washington testified that M.H. ran out of the room to the truck. 8T. at 1522. When Washington went to her to ask if she was alright, M.H. told Washington that he had hit her and raped her. 8T. at 1523. Washington denied that he had done either. Id.

### September 8, 2019 – M.B., Housekeeper, Motel 6

{¶18} M.B. was a housekeeper at the Motel 6 on September 8, 2019. She testified that she was cleaning her first room of the day, working in the bathroom. When she came out of the bathroom, a "guy" was standing in front of her. 6T. at 1123. The guy unzipped

his fly, pulled out his penis and asked her if she wanted company. Id. M.B. was unable to pick the person out of a photo lineup. Id. at 1126-1127. M.B. had described the perpetrator as having shoulder length dreadlocks. Id. at 1129. M.B. did not identify Washington in court as the man who had flashed her on September 8, 2019.

{¶19} At trial, Washington admitted exposing himself to the maid on September 8, 2019. 8T. at 1553.

### November 11, 2019 – K.H.

{¶20} K.H. testified that she met Washington through her friend that was dating him. In the morning of November 11, 2019, K.H. was awaken to Washington rubbing his penis in her face. 5T. at 920. She got up off the mattress and ran to the bathroom, disgusted. Id. Washington followed her into the shower, got undressed and attempted to shower with K.H. 5T. at 920; 8T. at 1538. K.H. did not want Washington in the shower so she got out. Id. As K.H. was attempting to get dressed, Washington, grabbed the pants from K.H.'s hands and pushed her onto the bed. 5T. at 921. Washington forced his penis inside K.H.'s vagina. Id. K.H. repeatedly told Washington "no." Id. at 922. Washington proceeded to masturbate and ejaculate on K.H. 5T. at 922; 8T. at 1538-1539.

{¶21} The next day, K.H. reported the incident to the police. She then went to the hospital for a SANE kit on November 12, 2019.

### December 7, 2019 – D.B.

{¶22} D.B. had an off-again, on-again relationship with Washington from October, 2017 through 2019. 3T. at 624-625. D.B. testified that her relationship with Washington was turbulent involving mental, physical and sexual abuse. 3T. at 631.

In April 2019, D.B. filed a police report concerning Washington's abuse. Id. at 371. D.B. subsequently dropped the charges. Id. at 672.

{¶23} On December 7, 2019, Washington invited D.B. to his home to smoke marijuana and drink. 3T. at 632. The couple had broken up before this time. Id. The couple engaged in consensual, vaginal sex before sleeping, with some of their clothes off. Id. at 638-39. D.B. put her pants, but not her underwear, back on and went to sleep. 3T. at 639. After D.B. went to sleep, Washington kept trying to pull her pants down; D.B. told him to stop. Id. at 639. She repeated herself but he was fighting her and pinning her down and trying to make her have sex with him. Id. at 639- 640. D.B. testified that Washington put a pillow over her face for "about ten minutes" trying to smother her. 3T. at 640. After a struggle, Washington finally pulled D.B.'s pants off. Id. at 644. "[Washington] was trying to have sex with D.B. vaginally ("[H]e was trying to shove inside me, and I was fighting him off") and orally ("[H]e had his other hand on his penis trying to put it in my mouth.") 3T. at 649- 650. Washington eventually forced his penis in her mouth and in her vagina. 3T. at 654. She told him "no "many times, more times than she could count." Id. at 655.

{¶24} D.B. reported the incident to the police and had a SANE examination.

{¶25} Washington testified that as D.B. was falling asleep, he slid her pants off and had sex with her. 8T. at 1546. He testified that D.B. was okay with that, and never told him "no." Id. at 1546-1547. Washington testified that the couple had sex again about an hour or two later. 8T. at 1547-1548. Washington testified that D.B. never said no, he never hit her and he never choked her. Id. Washington testified that

D.B. became angry because he told her she could not smoke cigarettes in the house. Id. at 1548-1549. He claimed D.B. told him that, "all I got to do is go get a rape kit, and you will be going to jail." 8T. at 1549. D.B. began throwing things off the dresser so he asked his sister to escort her out of the house. Id. at 1550-1551.

### Jury verdict and sentencing

{¶26} On October 7, 2020, the Jury returned Verdicts on all eighteen counts finding Washington "Guilty" on all counts. On October 14, 2020, the sentencing hearing was conducted by the trial court. On October 15, 2020, the trial court issued the Judgment Entry of Sentence. The trial court sentenced Washington to: (1) eleven years of imprisonment on Counts 1, 3, 7, 8, 13, 14, and 16; (2) eight year terms of imprisonment on Counts 2, 4, and 15; and, (3) three years of imprisonment on Count 5. Washington was further sentenced to "jail" for Counts 10, 11, 12 and 18. The trial court ordered that Count 6 merged with Count 5, Count 9 merged with Count 8, and Count 17 merged with Count 16.

{¶27} The trial court ordered that Counts 1, 4, 7, 13, and 14 are to be served consecutively with the other felony convictions/counts. The trial court ordered that Washington's minimum sentence shall be an aggregate minimum term of 52 years to a maximum term of 57 1/2 years, with five years of mandatory Post Release Control ("PRC").

*Assignments of Error*

{¶28} Washington raises five Assignments of Error,

{¶29} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY DENYING HIS MOTION FOR SEVERANCE TO BIFURCATE THE COUNTS AND ALLEGED SIX VICTIMS.

{¶30} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY REQUIRING AND/OR PERMITTING PROSPECTIVE JURORS DURING VOIR DIRE TO WEAR MASKS.

{¶31} "III. THE APPELLANT'S CONVICTIONS ON EACH AND ALL COUNTS WERE BASED UPON INSUFFICIENT EVIDENCE AND WERE OTHERWISE AGAINST THE SUFFICIENT AND/OR MANIFEST WEIGHT OF THE EVIDENCE AND NOT BEYOND A REASONABLE DOUBT, CONTRARY TO OHIO LAW AND THE OHIO CONSTITUTION AND UNITED STATES CONSTITUTION.

{¶32} "IV. THE APPELLANT WAS DENIED DUE PROCESS BY A SENTENCE CONTRARY TO OHIO LAW AND THE OHIO CONSTITUTION AND UNITED STATES CONSTITUTION INCLUDING MAXIMUM PRISON TERMS AND AN ORDER THAT CERTAIN COUNTS BE SERVED CONSECUTIVELY.

{¶33} "V. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO OHIO LAW AND THE OHIO CONSTITUTION AND UNITED STATES CONSTITUTION DUE TO HIS INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL."

I.

{¶34} In his First Assignment of Error, Washington contends the trial court abused its discretion in denying his request for relief from prejudicial joinder.

Washington argues that the trial court should have granted separate trials for each of the alleged six victims in the Indictment against him.

**Standard of Appellate Review**

{¶35} An appellate court normally reviews a trial court's decision on joinder for an abuse of discretion. *State v. Spaulding,* 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 63; *State v. Valentine,* 5th Dist. Fairfield No. 18 CA 27, 2019-Ohio-2243, ¶ 51. An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick*, 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; *In re Guardianship of S.H.,* 9th Dist. Medina No. 13CA0066-M, 2013-Ohio-4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No. 2006-CA-41, 2006-Ohio-5823, ¶54.

***Issue for Appellate Review:*** *Whether the trial judge abused his discretion in denying Washington's motion to sever the counts of the indictment for separate trials.*

{¶36} On August 13, 2020, Washington filed a Motion for Severance. On September 11, 2020, the Court denied the Motion for Severance. Although Washington filed a pretrial motion for severance, he did not renew it at the close of the state's case or at the conclusion of all the evidence. 7T. at 1459-1463; 8T. at 1616. Some Ohio courts have held a failure to renew the motion to sever constitutes a waiver. *State v. Miller*, 105 Ohio App.3d 679, 691, 664 N.E.2d 1309 (4th Dist. 1995), *citations omitted*; *State v. Valentine,* 3rd Dist. Marion No. 9-10-50, 2011-Ohio-3524, ¶82. However, this Court has preferred to address the claim on the merits. *State v. Musgrave,* 5th Dist. Stark No. 97-CA-0135, 1998 WL 818067(Oct. 26, 1998);

*State v. Miller*, 5th Dist. Stark No. 2003CA00273, 2004-Ohio-3716, 2004 WL 1564157, ¶ 15, fn. 1. *See also*, *State v. Sapp,* 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1739, ¶68.

*The trial court did not abuse its discretion in denying Washington's motion to sever*

{¶37} Under Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character, * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." In fact, "[t]he law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.'" *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990), *quoting State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). "Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992).

{¶38} Nonetheless, if it appears that a criminal defendant would be prejudiced by such joinder, then the trial court is required to order separate trials. Crim.R. 14. "It is the defendant, however, who bears the burden of demonstrating prejudice and that the trial court abused its discretion in denying severance." *State v. Saade*, 8th Dist. Cuyahoga Nos. 80705 and Cuyahoga Nos. 80706, 2002-Ohio-5564, ¶ 12, citing *State v. Coley*, 93 Ohio St.3d 253, 754 N.E.2d 1129 (2001), and *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166.

{¶39} In *State v. Franklin*, the Ohio Supreme Court noted,

The prosecutor may counter the claim of prejudice in two ways. *State v. Lott*, 51 Ohio St.3d at 163, 555 N.E.2d at 298. The first is the "other acts" test, where the state can argue that it could have introduced evidence of one offense in the trial of the other, severed offense under the "other acts" portion of Evid.R. 404(B). Id.; *see, also, Bradley v. United States* (C.A.D.C.1969), 433 F.2d 1113, 1118-1119. The second is the "joinder" test, where the state is merely required to show that evidence of each of the crimes joined at trial is simple and direct. *State v. Lott, supra; State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 16 O.O.3d 201, 204, 405 N.E.2d 247, 251; *State v. Torres*, 66 Ohio St.2d at 343-344, 20 O.O.3d at 315, 421 N.E.2d at 1291. *If the state can meet the joinder test, it need not meet the stricter "other acts" test. Thus, an accused is not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B). State v. Lott, supra; State v. Roberts, supra; State v. Torres, supra.*

62 Ohio St.3d 118, 122, 580 N.E.2d 1(1991).

{¶40} Evidence is "simple and direct" if (1) the jury is capable of readily separating the proof required for each offense, (2) the evidence is unlikely to confuse jurors, (3) the evidence is straightforward, and (4) there is little danger that the jury would "improperly consider testimony on one offense as corroborative of the other." *State v. Wright*, 4th Dist. Jackson No. 16CA3, 2017-Ohio-8702, ¶ 52, *citing State v. Freeland*, 4th Dist. Ross No. 12CA3352, 2015-Ohio-3410.

{¶41} Courts have held that evidence of multiple offenses is "simple and direct" where, for example, the offenses involved different victims, different incidents or factual scenarios, and different witnesses. *See State v. Dantzler*, 10th Dist. Franklin Nos. 14AP-907 and Franklin Nos. 14AP-908, 2015-Ohio-3641, ¶ 23 ("The evidence relating to each incident was simple and direct: the incidents occurred separately, involved different victims, and different eyewitnesses independently identified defendant as the shooter at each incident. As such, there was no concern that the jury would confuse the evidence, and defendant cannot establish that he was prejudiced by the joinder."); *State v. Lewis,* 6th Dist. Lucas Nos. L-09-1224 and Lucas Nos. L-09-1225, 2010-Ohio-4202, ¶ 33 ("Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof.").

{¶42} If either the "other acts" test or the "simple and direct" test is met, a defendant cannot establish prejudice from the joinder. *State v. Valentine*, 5th Dist. Fairfield No. 18 CA 27, 2019-Ohio-2243, ¶50.

{¶43} While the state argues that the cases could be tried together under either test, there is no reason for us to look to the more stringent "other acts" test because the evidence here was simple and straightforward. Each victim testified in detail as to the sexual abuse which occurred. Corroboration in the form of disclosure to other individuals was also presented and each of the women had SANE examinations done after the incidents occurred. The incidents were promptly reported to the police.

{¶44} As discussed in our disposition of Washington's Third Assignment of Error *infra,* sufficient evidence was produced to support each count of the Indictment without reference to any other count.

{¶45} There was no complicated methodology to Washington's crimes. Washington admitted having sexual relations with each women; however, he claimed that each one had consented to the sexual relations. A trier of fact is considered "capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated." *State v. Lunder*, 8th Dist. Cuyahoga No. 101223, 2014-Ohio-5341, ¶ 33, *citing Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288. There is nothing in the record before us to suggest that the jury confused the evidence as to the various counts or was improperly "influenced by the cumulative effect of the joinder." *State v. Banks*, 2015-Ohio-5413, 56 N.E.3d 289, ¶ 64 (8th Dist.) at ¶ 66.

{¶46} Moreover, we presume that the jury followed the court's instructions. *State v. Thompson,* 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 192, *citing State v. Loza*, 71 Ohio St.3d 61, 641 N.E.2d 1082 (1994). The trial court in this case instructed the jury as follows:

> Each of the offenses charged in these cases constitute a separate and distinct matter. You must consider each charge and the evidence applicable to each charge separately and you must state your findings as to each charge uninfluenced by your verdict as to the other charge[s]. The defendant may be found guilty or not guilty of any one or more of the crimes charged.

8T. at 1651. Washington has not attempted to argue that he would have defended any case differently if the charges had not been joined.

{¶47}  Because Washington has not demonstrated that his rights were prejudiced through the court's failure to sever these charges, we overrule Washington's First Assignment of Error.

II.

{¶48}  Prior to the start of trial, defense counsel made an oral motion in limine and/or objection as to any person whose credibility the defense had to judge being permitted to wear a mask during questioning. 1T. at 8 – 16.  Specifically, the defense objected to the wearing of masks by prospective jurors during voir dire questioning. Id. The defense stated that, without being able to view a person's face, as indicated by the trial court relevant to trial witnesses, it would be very difficult to judge their credibility and impartiality. Id.  The Court denied the motion. At that point, the Court informed counsel,

> The Court* * * is doing this due to Responsible RestartOhio [.] * * *
>
> [W]hen we bring those jurors up individually to the bench or outside of the presence of the remainder of the jurors, we can have them remove their masks at that time and * **you should be able to*** gauge any prejudice [.]

1T. at 10.  Prospective jurors when they were in the gallery, en masse, were to be masked but when they were brought to the bench and asked question related to bias, were not.

{¶49}  In his Second Assignment of Error, Washington contends this was error as facial expressions tell much about credibility and therefore implicate the Sixth Amendment right to a trial by fair and impartial jurors. [Appellant's brief at 24-25].

**Standard of Appellate Review**

{¶50} Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *See also State v. McKnight*, 107 Ohio St.3d 101, 2005–Ohio–6046, 837 N.E.2d 315, ¶ 88; *State v. Aeschliman,* 5th Dist. Stark No. 2013CA00192, 2014-Ohio-4462, ¶90. To find an error harmless, an appellate court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *State v. Lytle*, 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976).

{¶51} Whether the defendant's substantial rights were affected depends on whether the error was prejudicial, i.e., whether it affected the outcome of the trial. *State v. Jones,* 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶18 citing *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7

*Issue for Appellate Review: Whether the trial court's order that jurors wear face masks during voir dire prejudicially affected Washington's substantial rights.*

{¶52} Washington cites no authority that seeing the bottom of the jurors' faces is constitutionally required. Courts have consistently held to the contrary. *United States v. Ayala-Vieyra,* 6th Cir. No. 21-1177, 2022 WL 190756 (Jan. 21, 2022) at n.1 (collecting cases).There is absolutely nothing in the record suggesting that the jury's verdict may have been different if Washington could have seen jurors' full facial expressions during voir dire or trial. We are therefore convinced that the trial court's alleged error, to the extent it was an error at all, was harmless beyond a reasonable doubt. *United States v. Smith,* 6th Cir. No. 21-5432, 2021 WL 5567267 (Nov. 29, 2021).

{¶53} Washington's Second Assignment of Error is overruled.

III.

{¶54}   In his Third Assignment of Error, Washington argues that there is insufficient evidence to support his conviction for rape, attempted rape, kidnapping, abduction and assault[2]. [Appellant's brief at 25-26].    Further, Washington contends that these convictions are against the manifest weight of the evidence.

**Standard of Appellate Review– Sufficiency of the Evidence.**

{¶55}   The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."   This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).   The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.   "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶56}   When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997*; *Walker*, at ¶30.   "The relevant inquiry is whether, after viewing the

---

[2] Washington is not challenging Count 11 the Public Indecency count involving M.B., a charge that he admitted he committed during his testimony. Nor does Washington challenge Count 12, the Public Indecency count involving K.H. See, Appellant's brief at 26-27;  App. R. 12(A) (2),

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review:** *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Washington was guilty beyond a reasonable doubt of rape, attempted rape, kidnapping, and abduction as set forth in the Indictment.*

### Rape [Counts 1, 7, 13, and 14]

{¶57} R.C. 2907.02, Rape provides in relevant part,

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

{¶58} Sexual conduct is defined in R.C. 2907.01(A) as, "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons

regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶59}  R.C. 2901.22(A) provides, "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant. *State v. Garner*, 74 Ohio St.3d 49, 60, 1995-Ohio-168, 656 N.E.2d 623, 634(1995); *State v. Wallen*, 21 Ohio App.2d 27, 34, 254 N.E.2d 716, 722(1969).

{¶60}  "Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. R.C. 2901.01(A).

{¶61}  Concerning Count 1 of the Indictment, K.R. testified that Washington forcefully inserted his penis into her vagina. 2T. at 281-282. K.R. repeatedly told Washington to stop. 2T. at 278.

{¶62}  Concerning Count 7 of the Indictment, M.H. testified when she said she did not want to have sex at that time, Washington told her he was not going to take "no" for an answer. 6T. at 1170. Washington pulled down her pants and "proceeded to get on, like go inside [her], like sex." 6T. at 1170. Eventually, M.H. was able to kick Washington off of her. She pulled up her pants, grabbed her purse, ran out of the room, and locked herself in the truck. 6T. at 1170-71. She was naked

from the waist up. Id. at 1177. When Washington went to her to ask if she was alright, M.H. told Washington that he had hit her and raped her. 8T. at 1523.

{¶63} Concerning Count 13, K.H. testified Washington forced his penis inside K.H.'s vagina. Id. K.H. repeatedly told Washington "no." Id. at 922.

{¶64} Concerning Count 14, D.B. testified. Washington forced his penis in her mouth and in her vagina. 3T. at 654.

{¶65} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Washington engaged in sexual conduct with K.R., M.H., K.H. and D.B. by purposely compelling each one to submit by force or threat of force.

{¶66} We hold, therefore, that the state met its burden of production regarding the elements of rape, accordingly, there was sufficient evidence to support Washington's convictions for rape.

### Attempted Rape [Counts 2, 4, and 15]

{¶67} To find the Washington guilty of attempted rape in violation of R.C. 2907.02(A) (2) as alleged in Count 2, Count 4, and Count 15 of the indictment the trier of fact would have to find that Washington attempted to engage in sexual conduct by purposely compelling K.R., B.B., and D.B. to submit by force or threat of force.

{¶68} R.C. 2923.02(A) provides a definition of attempt: "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶69} The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step towards the commission of an offense. *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059(1976), paragraph one of the syllabus, *overruled in part by State v. Downs, 51 Ohio St.2d 47, 364 N.E.2d 1140(1977).* In defining substantial step, the *Woods* Court indicated that the act need not be the last proximate act prior to the commission of the offense. *Woods* at 131–32, 357 N.E.2d 1059. However, the act "must be strongly corroborative of the actor's criminal purpose." Id. at paragraph one of the syllabus. This test "properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent." *Woods, supra* at 132, 357 N.E.2d at 1063. In other words, a substantive crime would have been committed had it not been interrupted. Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case. *State v. Group*, 98 Ohio St.3d 248, 262, 2002-Ohio-7247, 781 N.E.2d 980, 996(2002), ¶100.

{¶70} The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant. *State v. Garner*, 74 Ohio St.3d 49, 60, 1995-Ohio-168, 656 N.E.2d 623, 634(1995); *State v. Wallen*, 21 Ohio App.2d 27, 34, 254 N.E.2d 716, 722(1969).

{¶71} Concerning Count 2 of the Indictment, K.R. testified that during the course of the attack Washington went to her and tried to shove his penis and his "balls" in her mouth. 2T. at 280. She refused to open her mouth. Id.

{¶72} Concerning Count 4 of the Indictment, B.B. testified Washington pulled her down to the bottom of the bed and, holding her by the hair, rubbed his penis on her face and cheek and lips, trying to stick it in her mouth. 3T. at 542. B.B. testified, "at one point it had slipped between my lips, but I was clenching my jaw so that he couldn't get it in my mouth and it would rub across my teeth." 3T. at 542. B.B. testified that she was hitting Washington's chest, trying to get him off of her.

{¶73} Concerning Count 15 of the Indictment, D.B. testified after a struggle, Washington finally pulled D.B.'s pants off. Id. at 644. "[Washington] was trying to shove inside me, and I was fighting him off" and [Washington] had his other hand on his penis trying to put it in my mouth.") 3T. at 649- 650.

{¶74} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Washington attempted to engage in sexual conduct with  K.R., B.B. K.H. , and D.B. by purposely compelling each one to submit by force or threat of force.

{¶75}  We hold, therefore, that the state met its burden of production regarding the elements of attempted rape, accordingly, there was sufficient evidence to support Washington's convictions for attempted rape.

**Kidnapping [Counts 3, 8 and 16].**

{¶76}  R.C. 2905. 01(A)(4) defines kidnapping:

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

* * *

(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will....

{¶77}   In the case at bar, there was no asportation or secreting of the victims.  K.R., M.H. and D.B. each voluntarily went with Washington. Each engaged in consensual sex with Washington. However, when each women refused to engage in further sexual activity with Washington their situations changed.

{¶78}   K.R. testified with respect to Count 3 of the Indictment that as she attempted to flee the room, Washington forcibly restrained her while attempting to force her to perform oral sex upon him.

{¶79}   M.H. testified with respect to Count 8 of the Indictment she was able to kick Washington off of her. She pulled up her pants, grabbed her purse, ran out of the room,  and locked herself in the truck.

{¶80}   D.B. testified with respect to Count 16 of the Indictment that Washington was fighting her and pinning her down and trying to make her have sex with him. At one point, he put a pillow over her face trying to smother her.

{¶81}   Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Washington by force, threat, or deception restrained the liberty of the K.R., M.H., and D.B. to engage in sexual activity against each one's will.

{¶82}   We hold, therefore, that the state met its burden of production regarding the elements of kidnapping, accordingly, there was sufficient evidence to support Washington's convictions for kidnapping.

**Abduction [Counts, 5, 6, 9, and 17]**

{¶83} The trial court merged Count 5 abduction of B.B with Count 6 abduction of B.B.; Count 8 kidnapping of M.H. with Count 9 abduction of M.H.; and, Count 16 kidnapping of D.B. with Count 17 abduction of D.B. Washington was not sentenced on the merged counts. 9T. at 1794-1795.

{¶84} R.C. 2905.02 Abduction states in relevant part,

(A) No person, without privilege to do so, shall knowingly do any of the following:

(1) By force or threat, remove another from the place where the other person is found;

(2) By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear;

{¶85} With respect to Count 5, B.B. testified that at one point Washington climbed off and she got up to run but he grabbed her by the ponytail and pulled her back. 3T. at 543. B.B. was finally able to get out the door; however, Washington followed her down the hall, pinning her against the wall by her neck chocking her. 3T. at 552.

{¶86} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Washington by force or threat, restrained the liberty of the B.B. under circumstances that create a risk of physical harm to her. We hold, therefore, that the state met its burden of

production regarding the elements of abduction as set forth in the Indictment, accordingly, there was sufficient evidence to support Washington's convictions.

### Assault [Count 10 and Count 18]

{¶87} R.C. 2903.13 provides that," No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶88} R.C. 2901.01(A)(3) provides, ""Physical harm to persons" means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶89} With respect to Count 10, Jennifer Coffindaffer, a certified Sexual Assault Nurse Examiner testified that M.H. had a black eye, two bite marks on her back, bruising and redness on her arms, and fingerprint bruising to her legs. 4T. at 824.

{¶90} With respect to Count 18, D.B. had bruising in the middle and the bottom of her neck, and a scrape on her neck, which she showed to police officers. 3T. at 554; 557.

{¶91} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Washington caused physical harm to M.H. and D.B. We hold, therefore, that the state met its burden of production regarding the elements of assault as set forth in Count 10 and Count 18 of the Indictment, accordingly, there was sufficient evidence to support Washington's conviction.

### Standard of Appellate Review – Manifest Weight.

{¶92} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387,

678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

> * * *

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶93}   The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.  *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20.  In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to

choose which one we believe." *State v. Dyke,* 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶94} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

{¶95} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin

No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶96} In the case at bar, the jury heard the witnesses, saw Washington's video statements to the police, heard Washington's testimony and viewed the evidence. The jury saw K.R., B.B., M.H., K.H., and D.B. testify and be subjected to cross-examination. Thus, a rational basis exists in the record for the jury's decision.

{¶97} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Washington's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Washington's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting Washington of the charges.

{¶98}  Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Washington was convicted.

{¶99}  Washington's Third Assignment of Error is overruled.

IV.

{¶100} In his Fourth Assignment of Error, Washington argues that the imposition of maximum consecutive sentences is contrary to law and not supported by the record. Further, he argues that his sentence violates the Eighth Amendment because it constitutes cruel and unusual punishment. [Appellant's brief at 31].

**Standard of Appellate Review.**

{¶101} We review felony sentences using the standard of review set forth in R.C. 2953.08.  *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 22*; State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31.

{¶102} In *State v. Gwynne,* a plurality of the Supreme Court of Ohio held that an appellate court may only review individual felony sentences under R.C. 2929.11 and R.C. 2929.12, while   R.C. 2953.08(G)(2) is the exclusive means of appellate review of consecutive felony sentences. 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶16-18.

{¶103} R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that **either** the record does not support the sentencing court's findings under  R.C. 2929.13(B) or  (D),  2929.14(B)(2)(e) or  (C)(4), or  2929.20(I), **or** the sentence is

otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶ 28; *State v. Gwynne,* ¶16.

{¶104} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus. *See* also, In *re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* 161 Ohio St. at 477 120 N.E.2d 118.

**Issue for appellate review:** *Whether the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law.*

### R.C. 2929.13(B).

{¶105}  R.C. 2929.13(B) applies to one convicted of a fourth or fifth degree felony. Washington was not convicted of either a fourth or fifth degree felony.

### R.C. 2929.13(C)

{¶106} R.C. 2929.13(C) applies to one convicted of a third-degree felony. Washington was convicted of Abduction, a felony of the third degree in violation of R.C. 2905.02(A)(2).

{¶107} R.C. 2919.13(C) provides,

> (C) Except as provided in division (D), (E), (F), or (G) of this section,
>
> in determining whether to impose a prison term as a sanction for a felony of

the third degree or a felony drug offense that is a violation of a provision of Chapter 2925. of the Revised Code and that is specified as being subject to this division for purposes of sentencing, the sentencing court shall comply with the purposes and principles of sentencing under section 2929.11 of the Revised Code and with section 2929.12 of the Revised Code.

{¶108} Thus, the legislature has provided no presumption either in favor of or against imprisonment upon conviction of a third-degree felony.

**R.C. 2929.13(D).**

{¶109} R.C. 2929.13(D) (1) applies to one convicted of a felony of the first or second degree, for a felony drug offense that is a violation of any provision of Chapter 2925., 3719., or 4729. of the Revised Code for which a presumption in favor of a prison term is specified as being applicable, and for a violation of division (A)(4) or (B) of section 2907.05 of the Revised Code for which a presumption in favor of a prison term is specified as being applicable.

{¶110} R.C. 2929.13(D)(1) provides that when sentencing for a first or second-degree felony "it is presumed that a prison sentence is necessary in order to comply with the purposes and principles of sentencing." Nonetheless, R.C. 2929.13(D)(2) provides that "[n]otwithstanding the presumption * * * the sentencing court *may* impose a community control sanction," (emphasis added), but only if the sentencing court finds that a community control sanction would (1) adequately punish the offender and protect the public from future crime, and (2) not demean the seriousness of the offense because the statutory less serious sentencing factors outweigh the more serious factors.

{¶111} Thus, in order to impose a community control sanction in the instant case, the trial court would have been required to find that such a sanction would adequately punish Washington, that Washington was less likely to re-offend, and that such a sanction would not demean the seriousness of the offense because Washington's conduct was less serious than conduct normally constituting the offense. *State v. Morin*, 5th Dist. Fairfield No. 2008–CA–10, 2008–Ohio–6707, 2008 WL 5265857, ¶ 27.

{¶112} The trial court noted that Washington victimized six women. 9T. at 1788. The court noted the seriousness of the offenses involving the traumatizing of the six women involved. Id. at 1789. Washington knew all of the victims except the motel housekeeper. Id. at 1789-1790. Further Washington was out on bond, pre-trial supervision when twelve of the counts occurred. Id. at 1790.

{¶113} In the case at bar, the trial court weighed and considered R.C. 2929.13(D) in Washington's case. We find Washington failed in his burden to overcome the presumption of imprisonment.

### R.C. 2929.14 (B)(2)(e).

{¶114} R.C. 2929.14(B)(2)(e) concerns additional prison sentences that a trial court can impose upon a defendant under specified circumstances. Washington was not given an additional prison sentence.

### R.C. 2929.14 (C)(4) Consecutive Sentences.

{¶115} In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses. R.C. 2929.41(A). "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing

entry[.]" *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37. Otherwise, the imposition of consecutive sentences is contrary to law. *See* Id. The trial court is not required "to give a talismanic incantation of the words of the statute, *provided that the necessary findings can be found in the record and are incorporated into the sentencing entry.*" Id. (Emphasis added).

{¶116} R.C. 2929.14(C)(4) provides,

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶117} R.C. 2929.14(C)(4) requires the trial court to undertake a three-part analysis. *State v. Alexander,* 1st Dist. Hamilton Nos. C–110828 and C–110829, 2012-Ohio-3349, 2012 WL 3055158, ¶ 15. Thus, in order for a trial court to impose consecutive sentences the court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender. The court must also find that (2) consecutive sentences are not disproportionate to the offender's conduct *and* to the danger the offender poses to the public. Finally, (3) the court must make *at least one of three additional findings*, which include that **(a)** the offender committed one or more of the offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under post release control for a prior offense; **(b)** at least two of the multiple offenses were committed as part of one or more courses of conduct, *and* the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of the offender's conduct; or **(c)** the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *See, State v. White*, 5th Dist. Perry No. 12-CA-00018, 2013-Ohio-2058, ¶36.

{¶118} In this case, the record does support a conclusion that the trial court made all of the findings required by R.C. 2929.14(C)(4) at the time it imposed consecutive sentences.

**R.C. 2929.14(C)(4): [T]he court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.**

{¶119} In the case at bar, the trial court made this finding on the record and in its sentencing entry.  9T. at 1796.

**R.C. 2929.14(C)(4)(a): The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**

{¶120} In the case at bar, the trial court found that Washington was out on bond, pre-trial supervision when twelve of the counts occurred. 9T. at 1790.

**R.C. 2929.14(C)(4)(b): At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**

{¶121} In the case at bar, the trial court made this finding on the record and in its sentencing entry.  9T. at 178-1789; 1796.

**R.C. 2929.14(C)(4)(c): The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.**

{¶122} The trial court noted that Washington prior criminal record consisted of misdemeanors. 9T. at 1790.

*Whether the trial court's decision to impose consecutive sentences in Smith's case is supported by the record.*

{¶123} According to the Ohio Supreme Court, "the *record must contain a basis upon which a reviewing court can determine that the trial court made the findings* required by R.C. 2929.14(C)(4) before it imposed consecutive sentences." *Bonnell*, ¶28 (emphasis added). "[A]s long as the reviewing court can *discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings,* consecutive sentences should be upheld." Id. at ¶29 (emphasis added). In addition, a plurality of the Ohio Supreme Court in *Gwynne* held that appellate courts may not review consecutive sentences for compliance with R.C. 2929.11 and R.C. 2929.12. *See, Gwynne,* 2019-Ohio- 4761, ¶18.

{¶124} In the case at bar as we have noted the record contains evidence to support the trial courts findings imposing consecutive sentences.

**R.C. 2929.11 and R.C. 2929.12 and Maximum Sentences.**

{¶125} A trial court's imposition of a maximum prison term for a felony conviction is not contrary to law as long as the sentence is within the statutory range for the offense, and the court considers both the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth  R.C. 2929.12. *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016–Ohio–5234, ¶ 10, 16.

{¶126} In *State v. Jones,* the Ohio Supreme Court found,

Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12. In particular, R.C. 2953.08(G)(2) does not permit an appellate court to conduct a freestanding inquiry like the independent sentence evaluation this court must conduct under R.C. 2929.05(A) when reviewing a death penalty-sentence. *See State v. Hundley*, ——Ohio St.3d ——, 2020-Ohio-3775, — N.E.3d —, ¶ 128 (recognizing that R.C. 2929.05(A) requires de novo review of findings and other issues within its scope). We therefore conclude that the merits panel's ultimate judgments were erroneous.

163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 42.

{¶127} Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. We also find that the record in the case at bar supports the trial court's findings under R.C. 2929.14(C)(4). Furthermore, the record reflects that the trial court considered the purposes and principles of sentencing and the seriousness and recidivism factors as required in Sections 2929.11 and 2929.12 of the Ohio Revised Code. While Washington may disagree with the weight given to these factors by the trial judge, Washington's sentence was within the applicable statutory range and therefore, we have no basis for concluding that it is contrary to law.

**Cruel and Unusual Punishment**

{¶128} Nor do we find that the sentences in this case violate the prohibition against cruel and unusual punishment.

{¶129} The Eighth Amendment to the United States Constitution prohibits excessive sanctions by the government. It provides as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." See, also, Section 9, Article I of the Ohio Constitution.

{¶130} It is well-established that sentences do not violate these constitutional provisions against cruel and unusual punishment unless the sentences are so grossly disproportionate to the offenses as to shock the sense of justice in the community. *See State v. Chaffin*, 30 Ohio St.2d 13, 282 N.E.2d 46 (1972). As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment. *State v. Stevens*, 5th Dist. Stark No. 2017CA00024, 2017-Ohio-8692, ¶ 10, *quoting McDougle v. Maxwell*, 1 Ohio St.2d 68, 69, 203 N.E.2d 334 (1964).

{¶131} Proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions. *State v. Morin,* 5th Dist. Fairfield No. 2008–CA–10, 2008–Ohio–6707, ¶ 69, *citing Solem v. Helm*, 463 U.S. 277, 290–292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). However, in *State v. Hairston,* 118 Ohio St.3d 289, 2008–Ohio–2338, ¶ 20, the Ohio Supreme Court held that "[w]here none of the *individual sentences* imposed on an offender are grossly disproportionate to their respective offenses, an *aggregate prison* term resulting from

consecutive imposition of those sentences does not constitute cruel and unusual punishment." Thus, Eighth Amendment proportionality review does not apply to consecutive sentences. *State v. Williams*, 1st Dist. Hamilton No. C-160336, 2017-Ohio-8898, 101 N.E.3d 547, ¶ 31, *citing Hairs*ton at ¶ 20. (Emphasis added).

{¶132} "As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69, 203 N.E.2d 334 (1964). "[P]unishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." Id.

{¶133} Washington has not contrasted his individual sentences or his aggregate prison term with any Ohio, out-of-state, or federal cases.

{¶134} Given that the trial court is not obligated to refer to every factor listed in R.C. 2929.12 as part of its sentencing analysis, "the defendant has the burden to affirmatively show that the court did not consider the applicable sentencing criteria or that the sentence imposed is 'strikingly inconsistent' with the applicable sentencing factors." *State v. Hull*, 11th Dist. Lake No. 2016-L-035, 2017-Ohio- 157, ¶8. Washington has failed in this burden. Washington has failed to clearly and convincingly show that the trial court failed to consider the principles of felony sentencing, or that the aggregate sentence is otherwise contrary to law. Washington has further failed in his burden to show the sentences imposed on him are grossly disproportionate to their respective offenses so as to shock the moral sense of the community.

{¶135} Washington's Fourth Assignment of Error is overruled.

V.

{¶136} In his Fifth Assignment of Error Washington maintains he received ineffective assistance of trial counsel.

**Standard of Appellate Review.**

{¶137} To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052. And to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694, 104 S.Ct. 2052. *Andtus v. Texas,* 590 U.S. __, 140 S.Ct. 1875, 1881 (June 15, 2020).

**Issue for Appellate Review:** *Whether there is a reasonable probability that, but for counsel's failures the result of the proceeding would have been different.*

{¶138} Washington's sole argument in support of this assignment is, "The Appellant will not rehash the evidence of ineffective assistance of counsel provided in the other Assignments of Error and the Appellant expressly incorporates those facts and arguments herein." [Appellant's brief at 33]. He gives no specifics. Nor does he cite to the portions of the record that support his claim that counsel's ineffectiveness prejudiced Washington's substantial rights.

{¶139} Because Washington fails to properly reference portions of the record supporting his claim that trial counsel was ineffective, Washington cannot demonstrate

the claimed error. *See Daniels v. Santic*, 11th Dist. Geauga No. 2004-G-2570, 2005-Ohio-1101, ¶ 13-15. *See, also*, App.R. 12(A)(2) and 16(A)(7); *Graham v. City of Findlay Police Dept.* 3rd Dist. Hancock No. 5–01–32, 2002–Ohio–1215 (stating, "[t]his court is not obliged to search the record for some evidence of claimed error. * * * Rather, an appellant must tell the appellate court specifically where the trial court's alleged errors may be located in the transcript"); *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees,* 108 Ohio St.3d 288, 2006-Ohio-903, ¶ 13; *State ex rel. Petro v. Gold,* 166 Ohio App.3d 371, 2006-Ohio-943(10th Dist.), ¶ 94*, appeal not allowed*, 110 Ohio St.3d 1439, 2006-Ohio-3862, *reconsideration denied,* 111 Ohio St.3d 1418, 2006-Ohio-5083; *Porter v. Keefe,* 6th Dist. Erie No. E-02-018, 2003-Ohio-7267, ¶109-113.

{¶140} The only articulable claim Washington asserts is that he wanted to call an additional witness and present additional evidence.

{¶141} Washington's claim with respect to both witnesses and evidence rests on mere speculation, and "[s]uch speculation is insufficient to establish ineffective assistance." *State v. Short*, 129 Ohio St.3d 360, 2011–Ohio–3641, 952 N.E.2d 1121, ¶ 119, *citing State v. Perez*, 124 Ohio St.3d 122, 2009–Ohio–6179, 920 N.E.2d 104, ¶ 217; *State v. Were,* 118 Ohio St.3d 448, 2008–Ohio–2762, 890 N.E.2d 263, ¶ 219; *State v. Elmore,* 111 Ohio St.3d 515, 2006–Ohio–6207, 857 N.E.2d 547, ¶ 121.

{¶142} The substance of the testimony and the evidence is not found in the record. We are unwilling to speculate the outcome of the trial would have been different but for failing to call additional witnesses or present additional evidence when neither claim is supported by facts, and therefore find appellant did not receive ineffective assistance of

counsel. *See, State v. Ducker*, 5th Dist. Stark No. 2012CA00193, 2013–Ohio–3658; *State v. Poulton*, 5th Dist. Muskingum No. CT2013–0030, 2014–Ohio–1198, *appeal not allowed*, 2014–Ohio–2487, 139 Ohio St.3d 1420, 10 N.E.3d 739.

{¶143} Additionally, we note Washington's trial counsel did call additional witnesses. One indicated ahead of time that she would defy her subpoena. 8T. at 1617-1619. Washington's sister told the trial court she would be there by one o'clock in the afternoon on the last day of trial but she chose not to appear. Id. at 1619. There were additional witnesses for whom the trial court prolonged the morning session in order for them to appear but they did not. Id. at 1618.

{¶144} In the alternative, because we have found no errors, as previously noted in our disposition of Washington's First, Second, Third and Fourth Assignments of Error, we find Washington was not prejudiced by defense counsel's representation of him.  The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.

{¶145} Washington' Fifth Assignment of Error is overruled.

{¶146} The judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J. concur